**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONTE LITTLE,

              Plaintiff,

    v.

CAROLYN COLVIN,
Acting Commissioner of the Social Security
Administration,

              Defendant.

Civil Action No. 12-568
DAR

**MEMORANDUM OPINION**

Plaintiff Donte Little commenced this action against the Commissioner of the Social

Security Administration seeking review of the Social Security Administration's denial of his

claim for disability and supplemental security income benefits.[1]  *See* Complaint (Document No.

1).  Plaintiff initiated this action in the United States District Court for the District of Maryland,

and at Plaintiff's request, the action was later transferred to this court.  *See* Order Granting

Transfer of Jurisdiction and Substitution of Counsel (Document No. 12-2).  The parties

consented to proceed before a United States Magistrate Judge for all purposes, and the matter

was assigned to the undersigned.  Order Referring Case to Magistrate Judge for All Purposes

(Document No. 13).  Pending for determination are Plaintiff's Motion for Summary Judgment

(Document No. 22) and Defendant's Motion for Judgment of Affirmance (Document No. 24).

Upon consideration of the motions, the memoranda in support thereof and opposition thereto, the

---

[1] Carolyn Colvin is currently the Acting Commissioner of Social Security, and is substituted as a party
pursuant to Federal Rule of Civil Procedure 25(d).

administrative record, and the entire record herein, the undersigned will grant Plaintiff's motion

in part, deny Defendant's motion, and remand the matter for further proceedings.

**BACKGROUND**

Plaintiff Donte Little is a sixteen year-old who "has been diagnosed with a learning

disability, attention deficit hyperactivity disorder, as well as attention deficit disorder."

Administrative Record (Document No. 17) at 14.  On October 31, 2008, Plaintiff's guardian,

Amy Jones, applied for supplemental security income on his behalf, contending that he has been

disabled since his date of birth.[2]  *Id.* at 104.  The agency determined that Plaintiff is not entitled

to supplemental security income benefits "because he is not disabled or blind under [the

agency's] rules."  *Id.* at 60.  Plaintiff requested reconsideration of the decision, *id.* at 63, but after

an additional review, the agency determined "that the first decision was correct," *id.* at 66.

Thereafter Plaintiff requested an administrative hearing, and was appointed counsel.  *Id.* at 69,

73-75.  An Administrative Law Judge ("ALJ") conducted a hearing on August 2, 2010, at which

he heard testimony from Plaintiff, who was represented by counsel, and from Ms. Jones.  *Id.* at

25-26.

The ALJ issued his findings on December 3, 2010, and determined that Plaintiff is not

disabled under the Social Security Act.  *Id.* at 8-24.  Although the ALJ found that Plaintiff suffers

from severe impairments – borderline intellectual functioning and anxiety disorder – the ALJ

found that his impairments do not meet, medically equal, or functionally equal one of the listed

---

[2] Elsewhere in the record, Ms. Jones uses the name Amy Jones-Little, and is referred to as Plaintiff's stepmother.  *See, e.g.*, Administrative Record at 204, 214 (signing as Amy Jones-Little); 303 (referring to Ms. Jones as Plaintiff's stepmother).  The Administrative Law Judge noted that Ms. Jones was incorrectly referred to as Plaintiff's stepmother in portions of the record.  *Id.* at 15.

impairments. *Id.* at 14-16.  The ALJ set forth his findings with respect to each of the six domains

considered when evaluating whether a claimant's impairments functionally equal the listed

impairments. *Id.* at 18-23.  The ALJ found that Plaintiff "has less than marked limitation" in

acquiring and using information, attending and completing tasks, interacting and relating with

others, and health and physical well-being. *Id.*  The ALJ further found that Plaintiff "has no

limitation" in moving about and manipulating objects or in his ability to care for himself. *Id.* at

22-23.  Accordingly, he concluded that Plaintiff's impairments do not functionally equal the

listed impairments.

Plaintiff sought review of the ALJ's decision before the Social Security Administration

Office of Disability Adjudication and Review's Appeals Council, *id.* at 7, and submitted a

written memorandum as additional evidence to be considered, *id.* at 4.  On November 3, 2011,

the Appeals Council denied Plaintiff's request for review. *Id.* at 1.  The ALJ's decision thus

became the final decision of the agency, and Plaintiff timely commenced this action for review of

the agency's decision.

**CONTENTIONS OF THE PARTIES**[3]

Plaintiff contends that the ALJ's decision is not supported by substantial evidence in the

record, and thus requests that the court reverse the agency's decision, or, in the alternative,

remand the case for a new hearing.  Plaintiff's Memorandum in Support of Motion for Summary

Judgment ("Plaintiff's Memorandum") (Document No. 22-1) at 11.  Plaintiff challenges the

---

[3] Plaintiff did not file an opposition to Defendant's motion.  The Scheduling Order (Document No. 21)
governing this action required that such a response be filed by December 7, 2012.  After the court granted
Defendant's request for an extension of time in which to file Defendant's motion and opposition, no new date was set
for the filing of Plaintiff's opposition. *See* 11/16/2012 Minute Order.  Accordingly, the court will not treat
Defendant's motion as conceded. *See* LCvR 7(b).

ALJ's determination that his impairments do not functionally equal the listed impairments,

contending that "the ALJ made numerous errors of finding of fact and application of law" in

reaching that determination.[4]  *Id.* at 12.  Plaintiff contends that in weighing the evidence from

clinical social workers at Crawford Consulting and Mental Health Services, the ALJ failed to

follow Social Security Ruling 06-03p by not providing "any analysis of the six factors

enumerated" therein.  *Id.* at 15.  Plaintiff further contends that the ALJ erred in assigning greater

weight to the opinions of Plaintiff's special education teacher and a state consultative examiner

because their "records lacked adequate support and inherent consistency to justify the weight

given by the ALJ."  *Id.* at 17.

Defendant, in support of her motion and in opposition to Plaintiff's motion, maintains

that the agency's decision is supported by substantial evidence in the record.  Memorandum of

Law in Support of Defendant's Motion for Judgment of Affirmance and in Opposition to

Plaintiff's Motion for Judgment of Reversal ("Defendant's Memorandum") (Document Nos. 24-

1, 25) at 1.  Defendant contends that the ALJ properly weighed the evidence "[i]n accordance

with the proper rules and regulations, including SSR 06-03p," and gave explanations for his

findings that were supported by substantial evidence in the record.  *Id.* at 8-10.  Responding to

Plaintiff's contentions, Defendant argues that "[a]lthough the ALJ did not specifically mention

---

[4] Plaintiff does not challenge the ALJ's findings with respect to the first two steps of the analysis, *see* Plaintiff's Memorandum at 12, that Plaintiff "has not engaged in substantial gainful activity" since his application date, and that Plaintiff "has the following severe impairments: borderline intellectual functioning and anxiety disorder."  *See* Administrative Record at 14.  Plaintiff also does not challenge the ALJ's finding, with respect to a portion of the third step, that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ."  *See id.* at 15.  Plaintiff's challenge instead focuses on the ALJ's finding that he "does not have an impairment or combination of impairments that functionally equals the listings . . . ."  *See id.* at 16-23.

the SSR 06-[0]3p factors when doing his evaluation, the analysis of the evidence does indeed

cover all of the relevant factors." *Id.* at 12.  Defendant further contends that the ALJ properly

relied on the opinions of Plaintiff's special education teacher and the state consultative examiner

because they were consistent with the rest of the record.  *Id.*

**APPLICABLE STANDARD**

A claimaint may seek judicial review in a United States district court of "any final

decision of the Commissioner of Social Security made after a hearing to which he [or she] was a

party . . . ."  42 U.S.C. § 405(g).  "The Commissioner's ultimate determination will not be

disturbed if it is based on substantial evidence in the record and correctly applies the relevant

legal standards."  *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted).  "In

other words, '[a] district court's review of the [Social Security Administration's] findings of fact

is limited to whether those findings are supported by substantial evidence.'"  *Broyles v. Astrue*,

910 F. Supp. 2d 55, 60 (D.D.C. 2012) (citations omitted).  "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Butler*, 353

F.3d at 999 (quoting another source) (internal quotation marks omitted) (citing *Richardson v.

Perales*, 402 U.S. 389, 401 (1971)).  "The test requires more than a scintilla, but can be satisfied

by something less than a preponderance of the evidence."  *Id.* (citation omitted) (internal

quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that

"[s]ubstantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel.

Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must

uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law,'" *Jeffries v.

*Astrue*, 723 F. Supp. 2d 185, 189 (D.D.C. 2010) (quoting *Smith v. Bowen*, 826 F.2d 1120, 1121

(D.C. Cir. 1987)).  The court "examines whether the ALJ has analyzed all evidence and has

sufficiently explained the weight he has given to obviously probative exhibits," *Nicholson v. Soc.*

*Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (citation omitted) (quoting another source)

(internal quotation marks and alteration omitted), but the court "is not to review the case 'de

novo' or reweigh the evidence," *Guthrie v. Astrue*, 604 F. Supp. 2d 104, 112 (D.D.C. 2009)

(citations omitted).  "The plaintiff bears the burden of demonstrating that the Commissioner's

decision is not based on substantial evidence or that incorrect legal standards were applied."

*Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation

omitted); *see also Garnes v. Colvin*, No. 12-1090, 2013 WL 5297221, at *4 (D.D.C. Aug. 27,

2013), *adopted by* 2013 WL 5218532 (D.D.C. Sept. 16, 2013).

## STATUTORY FRAMEWORK

The Social Security Act established a framework to provide benefits, by way of

supplemental income, to eligible disabled individuals.  42 U.S.C. §§ 1381, 1381a.  With respect

to the eligibility of minors, the statute provides, in pertinent part, that:

> (i) An individual under the age of 18 shall be considered disabled for
> the purposes of this subchapter if that individual has a medically
> determinable physical or mental impairment, which results in marked
> and severe functional limitations, and which can be expected to result
> in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months. (ii) Notwithstanding
> clause (i), no individual under the age of 18 who engages in
> substantial gainful activity (determined in accordance with
> regulations prescribed pursuant to subparagraph (E)) may be
> considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C).  By way of regulation promulgated pursuant to the statute, the Social

Security Administration has outlined its process for determining disability for minors. 20 C.F.R. § 416.924. First, the agency evaluates whether the child is "doing substantial gainful activity"; if so, the agency determines that the child is not disabled. § 416.924(a), (b). If not, the agency determines whether the child has a "medically determinable" "physical or mental impairment," or combination of impairments, that is "severe." § 416.924(a), (c). If deemed severe, the agency then determines whether the impairment, or combination of impairments, "meets, medically equals, or functionally equals the listings." § 416.924(a), (d). The "listings" refers to a "listing of impairments," found at 20 C.F.R. Part 404, Subpart P, Appendix 1, which, for children, "describes impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a).

In determining whether an impairment, or combination of impairments, functionally equals the listings, the agency considers six domains, or "broad areas of functioning intended to capture all of what a child can or cannot do." § 416.926a(b)(1). These include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* A child's impairment, or combination of impairments, "functionally equal the listings" if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."[5] § 416.926a(a). In making this determination, the agency considers "functional limitations resulting from all of [the child's] impairments, including their interactive and cumulative effects." § 416.926a(e)(1)(i).

---

[5] A limitation is regarded as "marked" if the child's "impairment(s) interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities"; it is "'more than moderate' but 'less than extreme.'" § 416.926a(e)(2)(i). An "extreme" limitation exists if the child's "impairment(s) interferes very seriously with [his or her] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(3)(i).

If the agency concludes that the child's impairment, or combination of impairments, meets, medically equals, or functionally equals the listings, and "it meets the duration requirement," the agency determines that the child is disabled.  § 416.924(a).

**DISCUSSION**

In arguing that the agency's decision is not supported by substantial evidence in the record, Plaintiff challenges the ALJ's consideration of opinion evidence in concluding, at the final step of the eligibility analysis, that Plaintiff's impairments do not functionally equal the listings.  Specifically, Plaintiff argues that the ALJ erred by assigning minimal weight to the opinion of social workers at Crawford Consulting and Mental Health Services ("Crawford"), and by assigning too much weight to the opinions of Plaintiff's special education teacher and a state consultative examiner.  While the court will not re-weigh the evidence, it will consider whether the agency erred by failing to consider or explain the weight given to probative evidence.  *See Broyles*, 910 F. Supp. 2d at 60-61 (citations omitted) (internal quotation marks and alterations omitted) ("[T]he court may not reweigh the evidence and replace the SSA's judgment regarding the weight of the evidence with its own . . . .  An ALJ's decision should be upheld where the ALJ has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits."); *see also Jeffries*, 723 F. Supp. 2d at 194 (citation omitted) ("It is the Administration's duty to determine the weight of evidence and resolve evidentiary conflicts and this Court may not substitute its judgment for that of the Administration.").

### *Opinion of Crawford Consulting and Mental Health Services*

Plaintiff, while acknowledging that Crawford was not a "treating source," argues that the

opinion of Crawford should have been afforded greater weight by the ALJ. Plaintiff's

Memorandum at 19. Plaintiff contends that the ALJ erred in "reject[ing] the finding of Crawford

Counseling that Plaintiff suffered from marked limitations in four of the six domains []," because

the ALJ "failed to properly evaluate the opinions of Crawford Counseling by failing to follow the

Social Security Ruling 06-03p." *Id.* at 13. Specifically, Plaintiff argues that the ALJ did not

consider all of the six factors for considering opinions from medical sources that are not deemed

"acceptable medical sources" under the regulations. *Id.* at 13-14.

On January 19, 2010, a representative of Crawford completed a medical and functional

capacity assessment for Plaintiff. Administrative Record at 261-63.[6] The representative

indicated that he or she had treated Plaintiff since September 2005. *Id.* at 261. The

representative opined that Plaintiff has marked impairment in four domains – acquiring and using

information, attending and completing tasks, interacting and relating with others, and caring for

himself. *Id.* at 262-63. The representative further opined that Plaintiff has moderate impairment

in moving about and manipulating objects, and in his health and physical well-being. *Id.*

Evidence from clinical social workers fall under the general category of "other sources"

of evidence that may be used by the agency in assessing how the child functions. *See* 20 C.F.R. §

416.913(d); *see also Titles II and XVI:II and XVI: Considering Opinions And Other Evidence*

*From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering*

*Decisions On Disability By Other Governmental And Nongovernmental Agencies*, Social

Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006) [hereinafter SSR 06-03p] (listing

---

[6] As noted by Defendant, *see* Defendant's Memorandum at 8 n.3, it is unclear from the administrative record who completed the assessment. *See* Administrative Record at 261-63. Plaintiff represents that the assessment was that of "clinical social workers," *see* Plaintiff's Memorandum at 13, and the ALJ similarly referred to the author of the assessment as a "licensed social worker," *see* Administrative Record at 18.

"licensed clinical social workers" as an example of an "other source").  The agency's policy

interpretation expresses that "[o]pinions from these medical sources, who are not technically

deemed 'acceptable medical sources' under [the agency's] rules, are important and should be

evaluated on key issues such as impairment severity and functional effects, along with the other

relevant evidence in the file."  SSR 06-03p at *3.  The same six factors applied to "the evaluation

of medical opinions from 'acceptable medical sources' . . . can be applied to opinion evidence

from 'other sources.'"  *Id.* at *4.  These six factors include: 1) whether the source has examined

the claimant; 2) the extent of the "treatment relationship" between the source and the claimant; 3)

whether the source's opinion is supported by "relevant evidence" or "supporting explanations";

4) consistency with the record as a whole; 5) specialization, if any, of the source; and 6) any other

factors "which tend to support or contradict the opinion."  20 C.F.R. § 416.927(c); *see also* SSR

06-03p at *4-5.

        The sole authority relied on by Plaintiff in support of his contention that the ALJ erred by

not "provid[ing] any analysis of the six factors" is the policy interpretation described above.  *See*

Plaintiff's Memorandum at 15.  However, the agency, in its policy interpretation, notes that

"[n]ot every factor for weighing opinion evidence will apply in every case."  SSR 06-03p at *5.

The agency further observes that "there is a distinction between what an adjudicator must

consider and what the adjudicator must explain in the disability determination or decision . . . ."

*Id.* at *6; *see Grant v. Astrue*, 857 F. Supp. 2d 146, 154-55 (D.D.C. 2012) (rejecting an argument

that "the ALJ erred by failing to consider the factors" and noting that "the ALJ has no obligation

to explicitly enumerate each of the six factors described in the Social Security regulations");

*Paris v. Astrue*, 888 F. Supp. 2d 100, 105 (D.D.C. 2012) (noting that "the ALJ was not required

to discuss each of the relevant regulatory factors when deciding what weight to give [a

physician's] opinion").

Although the ALJ did not explicitly enumerate and separately analyze each of the six

factors, he properly "explain[ed] the weight given to opinions from th[is] 'other source[],'" and

"ensure[d] that the discussion of the evidence in the determination or decision allows [the]

claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ." *See* SSR 06-03p at

*6. The ALJ explained that

> [T]he licensed social worker noted that the claimant had various
> marked limitations, as noted above (Exhibit 9F). In essence, the
> social worker opined that the claimant is functionally disabled. Yet,
> there are two reasons why the undersigned assigns little weight to
> Crawford's findings. First, the opinion is provided by a licensed
> social worker, which according to Social Security Regulation is given
> consideration but is not a primary source of value. Second, the
> findings are inconsistent with the record; in particular, the findings
> are contrary to the teacher questionnaire and that of evidence pointing
> to stabilization while being treated. In fact, the claimant and the
> claimant's guardian testified that the claimant has gotten better with
> medication.

Administrative Record at 18. In reaching this conclusion, the ALJ pointed to other evidence in

the record, including the opinion of Plaintiff's special education teacher, the opinion of a state

consultative examiner, the testimony of Plaintiff, the testimony of Plaintiff's guardian, and

Crawford's own treatment records. *Id.* at 17-18; *cf. Grant*, 857 F. Supp. 2d at 155 (finding that

the factors did not "weigh in favor of crediting" a physician's opinion where "the ALJ

specifically determined that [the] opinion was contradicted by other evidence in the record and

that there were no recent objective clinical findings that supported [the] opinion"); *Broyles*, 910

F. Supp. 2d at 62 (citation omitted) ("Because the ALJ specifically addressed [the plaintiff's

treating psychiatrist's] conclusory findings and explained why they contradicted the medical

evidence in the record, the ALJ did not fail to meet his duty to explain.").

While the ALJ did not afford much weight to the opinion of Crawford that Plaintiff

suffered from marked limitations in four domains, the ALJ's written findings demonstrate that he

considered Crawford's treatment records in assessing functional equivalence. *See* Administrative

Record at 17, 19, 20 (citing, *inter alia*, exhibits 8F, 9F, and 14F). For example, the ALJ

observed that "at Crawford he was noted to be calm, joyous, neat and cooperative; reported

seeing many of his friends; performed moderately well with his goals as evidenced by being

actively engaged in the session, maintaining eye contact and displaying a range of emotion to

express himself; and, displayed increased manners and continued to make mistakes, but believes

he is heading in the right direction []." *Id.* at 17 (citing session notes from Crawford).

Accordingly, the undersigned finds that the ALJ did not err in evaluating the opinion of

Crawford's social worker, or in explaining the weight he afforded to it, and further finds that the

ALJ's findings are supported by substantial evidence in the record.

### *Opinion of Special Education Teacher*

Plaintiff contends that the ALJ erred in affording "great weight" to a questionnaire

completed by Plaintiff's special education teacher, Carla Farley, because it was inconsistent with

the record and lacked adequate supporting documentation. Plaintiff's Memorandum at 17.

On January 6, 2009, Plaintiff's special education teacher and coordinator, Carla Farley,

rated Plaintiff's functioning for various activities within each domain, indicating "no problem" or

"slight problem" for most activities. Administrative Record at 151-56. With respect to "waiting

to take turns," "working at a reasonable pace/finishing on time," and "handling frustration

appropriately," Ms. Farley indicated that Plaintiff had an "obvious problem." *Id.* at 153, 156.

Ms. Farley noted that Plaintiff takes prescribed medication, although she did not know which

medication, and further noted that after taking it, Plaintiff "[f]ocuses more, is more attentive and

more disciplined." *Id.* at 157. At the time she completed this questionnaire, Ms. Farley had

known Plaintiff for six months and saw him five days per week in her capacity as the co-teacher

for all of his subjects during fifth grade. *Id.* at 151.

Evidence from "educational personnel" is deemed "other source" evidence that the ALJ

may consider in assessing severity of impairments and ability to function. 20 C.F.R. §

416.913(d)(2). In evaluating functional equivalence, the ALJ "assign[ed] great weight" to Ms.

Farley's questionnaire, finding that "it is consistent with the record"; specifically, the ALJ noted

its consistency with Plaintiff's testimony "that he is able to focus while taking medication, and

the overall impression that he only has slight problems in the functional areas []."

Administrative Record at 18.

Plaintiff first argues that the ALJ erred in finding that Ms. Farley's assessment was

consistent with the record because records from Crawford "make up the majority of the records

in Plaintiff's case," and contends that it is inconsistent to argue that Ms. Farley's questionnaire is

"both consistent with the entire record and inconsistent with the Crawford Counseling records."

Plaintiff's Memorandum at 17. However, the court notes, as does Defendant, *see* Defendant's

Memorandum at 15 n.7, that the ALJ's finding that the opinion of Crawford is inconsistent with

the opinion of Ms. Farley is not at odds with the ALJ's finding that Ms. Farley's opinion is

consistent with the overall record in this case. *See* Administrative Record at 17 (citing records

from both Ms. Farley and Crawford for the proposition that Plaintiff "is improving with therapy

and medication").

Plaintiff further argues, *see* Plaintiff's Memorandum at 18, that Ms. Farley's questionnaire is inconsistent with her notation on Plaintiff's individualized educational program ("IEP") that Plaintiff was "unable to do work [at his] grade level," *see* Administrative Record at 205. However, Plaintiff does not provide support for his contention that the two documents, albeit being differently worded, are in fact, inconsistent.

Finally, Plaintiff contends that Ms. Farley's findings "lacked adequate support" because "no supporting school records, nor any written explanation for [the] conclusions" were provided. Plaintiff's Memorandum at 17. Plaintiff correctly observes that Ms. Farley did not provide explanations for her findings, which were in the form of check-box answers on a questionnaire. *See* Administrative Record at 152-56. However, as acknowledged by Plaintiff, *see* Plaintiff's Memorandum at 18, there were other educational records contained in the administrative record. *See* Administrative Record at 204-12 (Plaintiff's IEP); *id.* at 213-14 (notes from Plaintiff's October 30, 2008 IEP team meeting). A reasonable mind could conclude that this evidence, along with the other evidence contained in the record, supports the ALJ's finding that Ms. Farley's opinion is consistent with the record. *See, e.g.*, *id.* at 213 (noting Plaintiff's continued progress in the areas of math reasoning, reading comprehension, and written expression; that he was "appropriately placed on the High School Diploma Track"; and that, based on his performance, he did not need extended school year services).

Plaintiff does not provide a basis upon which the court can conclude that the ALJ erred in considering the questionnaire completed by Ms. Farley, or by failing to provide a sufficient explanation for the weight he gave to her opinion. Further, the ALJ's findings with respect to this evidence are supported by substantial evidence in the record.

***Opinion of State Consultative Examiner***

Similar to his challenge with respect to Ms. Farley's questionnaire, Plaintiff raises the

same arguments with respect to the ALJ's consideration of an evaluation by Dr. Sambhu Banik, a

licensed psychologist and state consultative examiner, *i.e.*, that his report was inconsistent with

the record and lacked adequate "supporting documentation." *See* Plaintiff's Memorandum at 17-

18.

Dr. Banik administered two tests – the Wechsler Intelligence Scale for Children-IV and

Vineland Adaptive Behavior Scale – and conducted a clinical interview before preparing his

report of psychological evaluation.  Administrative Record at 309-314.  The ALJ "assign[ed]

great weight" to Dr. Banik's report – specifically, Dr. Banik's findings that Plaintiff "has average

to low average level of functional intelligence and moderately slow pace of growth in areas of

socialization and high score on maladaptive behavior domain" – after noting that they are

"consistent with the record." *Id.* at 18.  The ALJ acknowledged some factual errors in Dr.

Banik's report, but concluded that they were "collateral to the issues at hand and [did] not alter

Dr. Banik's observations of the claimant's capabilities." *Id.*

The court has already addressed Plaintiff's contention that "the ALJ could not have found

the teacher's questionnaire and functional report from Dr. Banik **both** consistent with the entire

record and inconsistent with the Crawford Counseling records." *See* Plaintiff's Memorandum at

17 (emphasis in original).

Next, Plaintiff argues that "Dr. Banik's evaluation was based upon two standardized test

results and a single interview, and contained not only no supporting documentation, but an

acknowledgment of Dr. Banik's failure to review any of Plaintiff's psychological records []."

Plaintiff's Memorandum at 17.  Dr. Banik supported his findings with respect to the limitations

caused by Plaintiff's impairments, *see* Administrative Record at 315-16, with documentation of

the results from the two tests he administered as well as the findings from his clinical interview,

*id.* at 310-14.  Plaintiff offers no authority for the proposition that the ALJ erred in considering

the report, due to Dr. Banik's failure to review Plaintiff's previous psychological records.

Finally, Plaintiff avers that Dr. Banik's report should not have been given considerable

weight because it is inconsistent with the report of another state consultant, Dr. Nuha

Abudabbeh, a clinical and forensic psychologist whose findings the ALJ did not mention in his

decision.  Plaintiff's Memorandum at 18.  Although Plaintiff only indirectly raises this point in

the context of his argument regarding the weight given to Dr. Banik's report, *see id.*, the

undersigned concludes that the ALJ erred by not addressing Dr. Abudabbeh's evaluation in his

decision.

"Unless a treating source's opinion is given controlling weight, the administrative law

judge must explain in the decision the weight given to the opinions of a State agency medical or

psychological consultant . . . ."  20 C.F.R. § 416.927(e)(2)(ii); *see also Titles II & XVI:*

*Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants &*

*Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council*, Social

Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996) ("Administrative law judges and the

Appeals Council are not bound by findings made by State agency or other program physicians

and psychologists, but they may not ignore these opinions and must explain the weight given to

the opinions in their decisions."); *Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011)

(citations omitted) (explaining that while "ALJs need not mention every piece of evidence,"

medical opinions from examining consultative psychologists must be explained pursuant to the

agency's regulations, and that an error exists "when there is reason to believe that an ALJ ignored

important evidence" because "[o]therwise, [the court] cannot confidently assess the agency's

rationale and afford the claimant meaningful review").

Dr. Abudabbeh opined that Plaintiff is "significantly impacted by the ADHD, LD, and the

usual co-occurring behavior and mood disorder." Administrative Record at 304. The ALJ failed

to mention or cite to Dr. Abudabbeh's evaluation despite his numerous references to Dr. Banik's

evaluation, *see id.* at 14-15, 18, 20, and his reliance on Dr. Banik's finding that Plaintiff's

limitations were "moderate," *see id.* at 19-20. Moreover, the consultative examiners conducted

the evaluations around the same time, in September and October of 2010. *See id.* at 302, 310.

The parties attempt to illustrate how Dr. Abudabbeh's findings are consistent or

inconsistent with Dr. Banik's findings and from the other evidence in the record. *See* Plaintiff's

Memorandum at 18; Defendant's Memorandum at 17-18. However, it is the ALJ's role to weigh

Dr. Abudabbeh's evaluation and address any "differences between the doctors' reports and

diagnoses," *see* Defendant's Memorandum at 17. *See Cobb v. Astrue*, 770 F. Supp. 2d 165, 173

(D.D.C. 2011) (citations omitted) (internal quotation marks omitted) (noting that "[t]he function

of this Court . . . is to review the determinations actually made by the ALJ, not to engage in these

determinations for him"); *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009) (citation

omitted) ("A reviewing court should not be left guessing as to how the ALJ evaluated probative

material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently

the weight he has given to certain probative items of evidence.").

**CONCLUSION**

Accordingly, because the ALJ erred by not explaining the weight given to the report of

state consultative examiner Dr. Abudabbeh, the court will remand this matter for express

findings with respect to the weight given to Dr. Abudabbeh's report.  The court will issue an

order remanding this case to the Social Security Administration, pursuant to 42 U.S.C. § 405(g),

for further proceedings consistent with this Memorandum Opinion.


_____/s/_____

November 22, 2013                                    DEBORAH A. ROBINSON
                                                     United States Magistrate Judge